IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FILE NO. 2:26-cv-03769-RMG

| | | |
|---|---|---|
| PENN NATIONAL SECURITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHARLESTON CONCRETE CONSTRUCTION, LLC and MIDTOWN TOWNHOMES HPR OWNERS ASSOCIATION, INC.;<br><br>Defendants. | ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |

**COMES NOW** Plaintiff Penn National Security Insurance Company ("Penn National"), by and through counsel, and pursuant to Rules 7, 8, and 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. § 2201, and alleges and says:

## Preliminary Statement

1. Pursuant to 28 U.S.C. § 2201, Penn National seeks a declaratory judgment and adjudication concerning the rights, obligations and liabilities of the parties with respect to coverage under policies of insurance issued by Penn National to Charleston Concrete Construction, LLC ("Charleston Concrete") with respect to claims asserted by Defendant Midtown Townhome HPR Owners Association, Inc. ("Midtown") against Charleston Concrete in a lawsuit captioned "*Midtown Townhomes HPR Owners Association, Inc. v. Lennar Carolinas, LLC* et al.," C.A. No. 2022CP1004509, pending in the Court of Common Pleas in and for Charleston County, South Carolina (the "Underlying Lawsuit").

**Jurisdiction**

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

**Venue**

3. This action properly lies in the U.S. District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (2) since the defendants all reside in the same state and in this judicial district, and a substantial part of the events giving rise to this declaratory judgment occurred in this judicial district.

**Parties**

4. Penn National is an insurance company duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in Harrisburg, Pennsylvania.

5. Upon information and belief, Charleston Concrete is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Mt. Pleasant, South Carolina. Service of process may be made on Midtown by delivering a copy of the summons and complaint to its registered agent, Ronald D. Pitts II with a mailing address of 1713 Halls Pond Road, Mt. Pleasant, South Carolina 29464.

6. Upon information and belief, Midtown is a mutual benefit, non-profit corporation formed under the laws of the State of South Carolina to manage the affairs of Midtown Townhomes Horizontal Property Regime. Service of process may be made on Midtown by delivering a copy of the summons and complaint to its registered agent, FirstService Residential Charleston, LLC with a mailing address of 200 Sigma Dr., Ste 350, Summerville, South Carolina 29486.

## Facts

7. On September 27, 2022, Midtown filed the Underlying Lawsuit, asserting claims related to alleged defects in the construction of common elements at Midtown Townhomes, a townhome project consisting of 15 buildings and various common areas located in Mt. Pleasant, Charleston County, South Carolina (the "Midtown Project"). A true and accurate copy of the Third Amended Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit 1** and incorporated herein by reference.

8. It is alleged in the Underlying Lawsuit that Defendant Lennar Carolinas, LLC ("Lennar") began construction of the Midtown Project in late 2019 and completed construction in 2022.

9. It is alleged in the Underlying Lawsuit that Charleston Concrete performed work and supplied materials used in the construction of the Midtown Project, including installation of the brick veneer and associated components.

10. It is alleged in the Underlying Lawsuit that the defects in the Midtown Project included deficiencies in exterior building envelopes. For example, it is alleged that the townhomes in the Midtown Project have demonstrated extensive cracking, deflection, and displacement in the brick veneer cladding (hereinafter "failure" or "failed brick"), and that the exterior brick walls at the townhomes continue to experience failure, with cracking commonly traversing through more than 20 courses of brick, to as many as 37 courses of brick.

11. It is alleged in the Underlying Lawsuit that the brick failures are the result of defective design and construction, including insufficient masonry support design and installation.

12. Midtown has asserted causes of action against Charleston Concrete, along with several other entities that allegedly performed work on the Midtown Project, for (1) Negligence and Gross Negligence/Recklessness, and (2) Breach of Implied Warranty.

13. Penn National issued commercial general liability policies, policy no. CX9 0713775, to "Charleston Concrete Construction LLC," effective from September 30, 2018, to September 30, 2022 (the "Penn National Policies" or "Policies"). True and accurate copies of the Policies are attached hereto as **Exhibit 2** and are incorporated herein by reference.

14. The Penn National Policies include a Commercial General Liability ("CGL") Coverage Part with a liability limit of $1 million Each Occurrence and a General Aggregate Limit of $2 million.

15. Charleston Concrete tendered the claims against it in the Underlying Lawsuit to Penn National for a defense under the Penn National Policies.

16. Penn National is providing a defense to Charleston Concrete under a full and complete reservation of rights under the Penn National Policies to disclaim coverage for some or all of the claims and damages asserted against Charleston Concrete in the Underlying Lawsuit.

17. Penn National has filed the present action in order to seek a declaration relative to the rights, duties, and obligations of the parties under the Penn National Policies with regard to the claims and damages sought against Charleston Concrete in the Underlying Lawsuit.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment – Coverage)**

18. Penn National incorporates by reference the preceding paragraphs as if fully set forth herein.

19. Charleston Concrete is not entitled to coverage under the Penn National Policies for the claims or damages sought against it in the Underlying Lawsuit because the Policies contain terms, conditions, and exclusions which preclude coverage for the damages sought against Charleston Concrete in the Underlying Lawsuit.

20. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages

claimed in the Underlying Lawsuit do not constitute "property damage" as that term is defined in the Policies and as is required by the Insuring Agreement in the Policies.

21. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit were not caused by an "occurrence" as that term is defined in the Policies and as is required by the Insuring Agreement in the Policies.

22. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit are expressly excluded from coverage under the Policies as damages that were expected or intended from the standpoint of the insured.

23. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit against Charleston Concrete are excluded from coverage under the Policies as damages for which Charleston Concrete is obligated to pay by reason of the assumption of liability in a contract or agreement.

24. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit are expressly excluded from coverage under the Policies as damages to that particular part of real property that must be restored, repaired, or replaced because the work of Charleston Concrete was incorrectly performed on it, except to the extent that the "property damage" is included in the "products completed operations hazard".

25. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages

claimed in the Underlying Lawsuit are expressly excluded from coverage under the Policies as damages to Charleston Concrete's product arising out of it or any part of it.

26. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit are expressly excluded from coverage under the Policies as damages to Charleston Concrete's work arising out of it or any part of it, except to the extent that the damaged work or the work out of which the damage arises was performed on behalf of Charleston Concrete by a subcontractor.

27. Charleston Concrete is not entitled to coverage under the Penn National Policies for any of the claims or damages sought against it in the Underlying Lawsuit because the damages claimed in the Underlying Lawsuit are expressly excluded from coverage under the Policies as damage to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in Charleston Concrete's product or work, or (2) A delay or failure by Charleston Concrete or anyone acting on Charleston Concrete's behalf to perform a contract or agreement in accordance with its terms, including any damages sought against Charleston Concrete for loss of use of the subject property.

28. The "Fungi" exclusion bars coverage under the Policies for any damages sought against Charleston Concrete in the Underlying Lawsuit which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage, as well as any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating,

detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

29. In the alternative, to the extent that Charleston Concrete is entitled to coverage under the Penn National Policies for any of the claims or damages resulting from the allegations contained in the Underlying Lawsuit, Penn National's indemnity obligation is limited to those covered damages that occurred during the policy periods for any of the triggered Policies. The certificates of occupancy for the buildings in the Midtown Townhomes were issued between November 20, 2020, to January 24, 2022. Therefore, to the extent that Charleston Concrete is entitled to coverage under the Penn National Policies for any of the claims or damages resulting from the allegations contained in the Underlying Lawsuit, coverage could only be available for such claims or damages that occurred during the policy periods for the Penn National Policies effective from September 30, 2020, to September 30, 2022. Thus, Penn National is entitled to a judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring and adjudging that Penn National's share, if any, of any indemnity obligation for the claims or damages asserted against Charleston Concrete in the Underlying Lawsuit is limited to Penn National's pro-rata share of any covered damages based upon Penn National's time-on-the-risk. Penn National's pro-rata share of the time-on-the-risk is measured by first calculating the total period of time from the injury-in-fact until the damages were complete (the "trigger spread"). Penn National's pro-rata share would then consist of the period of time that its triggered policies were in effect during this "trigger spread" (September 30, 2020, to September 30, 2022) as compared to the overall "trigger spread".

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment – Number of "Occurrences")**

30. Penn National incorporates by reference the preceding paragraphs as if fully set forth herein.

31. The Penn National Policies carry liability limits of $1 million per occurrence and $2 million in the general aggregate and the products-completed operations aggregate limit.

32. The $1 million per occurrence limit is the most that Penn National will pay for the sum of damages under Coverage A and medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

33. The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34. The damages sought against Charleston Concrete in the Lawsuit in relation to the Midtown Project arise out of a single "occurrence" as that term is defined by the Policies, and so the $1 million per occurrence limit applies under the Policies.

35. Furthermore, the "Two Or More Policies Issued By Us" endorsement provides that if more than one policy issued by Penn National to Charleston Concrete apply to the same occurrence, then the aggregate maximum limit of insurance under all such policies shall not exceed the highest applicable limit under any one policy.

36. The highest applicable limit under any one of the Penn National Policies would be $1 million per occurrence.

37. Accordingly, the combined total liability limit available to Charleston Concrete for the claims in the Underlying Lawsuit under all of the Penn National Policies would be a single $1 million per occurrence limit.

38. A genuine, actual, and justiciable controversy has now arisen and presently exists between and among the parties to this action concerning the applicable coverage afforded by Penn National under the Penn National Policies for the claims or damages sought against Charleston Concrete in the Underlying Lawsuit.

39. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as to whether and the scope of coverage afforded by the Penn National Policy for the claims and damages sought against Charleston Concrete in the Underlying Lawsuit.

40. The Penn National Policies does not provide coverage to Charleston Concrete for the claims and damages sought against Charleston Concrete in the Underlying Lawsuit because the Policies contain other terms, conditions, and exclusions which otherwise preclude or limit coverage for the claims asserted against Charleston Concrete in the Underlying Lawsuit.

41. Penn National requests this Court to declare the rights, obligations, and liabilities of the parties under the Penn National Policies with respect to the claims and damages sought against Charleston Concrete in the Underlying Lawsuit pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

**WHEREFORE,** Plaintiff Penn National Security Insurance Company respectfully prays the Court as follows:

1. That a declaratory judgment be entered adjudging and declaring the relative rights of the parties to this action concerning the applicable coverage afforded by Penn National to Charleston Concrete under the Penn National Policies for the claims or damages sought against Charleston Concrete in the Underlying Lawsuit. Specifically, Penn National is entitled to a judgment declaring and adjudging that the Penn National Policies do not provide coverage for

the claims or damages sought against Charleston Concrete in the Underlying Lawsuit; or, in the alternative, to the extent that Charleston Concrete is entitled to coverage under the Penn National Policies for any of the claims or damages sought against Charleston Concrete in the Underlying Lawsuit, Penn National is entitled to a judgment declaring and adjudging that Penn National's indemnity obligation is limited to those covered damages that occurred during the policy periods for any of the triggered Penn National Policies and that Penn National's share, if any, of any indemnity obligation is limited to Penn National's pro-rata share of any covered damages based upon Penn National's time-on-the-risk; or, in the alternative, to the extent that Charleston Concrete is entitled to coverage under the Penn National Policies for any of the claims or damages sought against Charleston Concrete in the Underlying Lawsuit, that the combined total liability limit available to Charleston Concrete for the claims in the Underlying Lawsuit under all of the Penn National Policies would be a single $1 million per occurrence limit;

2. That the costs of this action be taxed against the Defendants;

3. For a trial by jury on all issues so triable; and

4. For such other and further relief as the Court may deem just and proper.

This the 28th day of August, 2026.

/s/ David G. Harris II
David G. Harris II (S.C. Federal Bar No.: 12039)
David L. Brown (N.C. State Bar No. 18942)
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina 27408
Telephone: 336.419.4900
Facsimile: 336.419.4950
Email: dbrown@goldbergsegalla.com
dharris@goldbergsegalla.com

*Attorneys for Penn National*